IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 19-cv-00508-LTB

GREAT LAKES INSURANCE, S.E.,

        Plaintiff,

v.

HIGHLAND WEST LLLP,

        Defendant.

## ORDER

This matter is before me on a Motion for Partial Summary Judgment filed by Plaintiff Great Lakes Insurance, S.E. ("Great Lakes"). [**Doc #69**] Great Lakes seeks resolution of the First Claim for Relief of its Amended Complaint requesting declaratory judgment to resolve a question of insurance coverage. [Doc #28] Defendant Highland West LLLP ("Highland West") has filed a Response to Plaintiff's Motion for Partial Summary Judgment [Doc #73] opposing the relief requested, and Great Lakes has filed a Reply. [Doc #74]. Oral argument would not materially assist me in my determination of this motion. After consideration of the parties' briefs, and for the reasons stated, I GRANT IN PART AND DENY IN PART Great Lakes' Motion for Partial Summary Judgment.

        I.        BACKGROUND

Based on the briefing and evidence submitted, the parties agree on the facts that follow. Highland West is the owner of a twelve-story multifamily residential property located in Wheatridge, Colorado (the "Highland West Tower"). Motion (Statement of Undisputed Material Facts) ¶ 3. Highland West insured the Highland West Tower under a Great Lakes insurance

policy which included an All Risk Property Damage Coverage Form, Policy Number B066479244A12; Property ID: P00056537 ( the "Policy"). *Id.* ¶ 4. The Policy, which includes a hail deductible of $25,000.00, was in effect during the relevant time period. *Id.* ¶¶ 5, 6. The Policy provides that claims will be administered by Claims Adjusting Group, Inc. ("CAG"). *Id.* ¶ 7. Highland West purchased the Policy with an endorsement which provides exclusion from property damage coverage for any cosmetic loss to roof coverings or siding caused by a windstorm or hail (the "Cosmetic Loss Exclusion"). *Id.* ¶ 8. The Cosmetic Loss Exclusion provides, in relevant part, as follows:

> A. In Section 7. PERILS EXCLUDED; under paragraph a. the following is added:
>
> Cosmetic Loss
> "Cosmetic loss" to "roof covering" or "siding" caused directly or indirectly by Windstorm or Hail.
>
> B. ADDITIONAL DEFINITIONS
>
> As used throughout this endorsement;
>
> 1. "Cosmetic Loss" means loss or damage that alters the physical appearance but does not result in the failure to perform the intended function of keeping out elements over an extended period of time.
>
> 2. "Roof Covering" means:
>    a. The roof material exposed to the weather:
>    b. The underlayments applied for moisture protection;
>    c. All flashings required in the replacement of the roof covering.
>
> 3. "Siding" means the materials exposed to the weather providing exterior protection to the walls of a building or structure.

*Id.*; Motion, Ex. 4. [Doc #69-5]

The Highland West Tower sustained hail damage during a May 8, 2017 storm. Motion ¶

2

10. In the months that followed, the parties retained experts and consultants to analyze and assess the damage. *Id*. ¶¶ 13, 14-17. On September 24, 2018, Claim Solutions LLC ("Claim Solutions"), who Highland West had retained as its public adjuster for the hail loss, submitted a letter to CAG regarding damage to the building and "what would be involved in replacing the damaged windows and interlocking siding system." *Id*. ¶ 11; Motion, Ex. 8. [Doc #69-9] Claim Solutions attached a letter from Pinnacle Windows and Restoration ("Pinnacle") dated August 18, 2018, in which Pinnacle identified damage to "all the west elevation [window] screens, vertical T-Mullions, break [sic] metal, sill flashings and siding." *Id*. ¶ 20; Motion, Ex. 9. [Doc #69-10] Pinnacle stated in its letter that the storm "did not damage the structural frame components" of the window systems, but that "[d]ue to the rigid sill flashing being mechanically fastened underneath the window systems the windows need to be removed [but later replaced] to replace the sill flashings on each floor of the West elevations." *Id*. The letter also stated: "[u]nderneath each of the rigid sill flashings is a moldable sill flashing. This sill flashing is required by the manufacturer and per the engineered specifications for water and air infiltration." *Id*. Pinnacle's preliminary estimate for the repair work totaled $1,461,553.00. *Id.*

On February 4, 2019, Great Lakes, through CAG, issued a partial denial of coverage for the full replacement of the windows and siding claimed in the Pinnacle letter and any potential claim for damages to the building's metal parapet caps. Motion ¶ 34; Motion, Ex. 19. [Doc #69-20] In the denial letter, CAG stated that Great Lakes was denying this part of the claim because the damage was only cosmetic. Great Lakes, however, agreed to pay for replacement of the window screens as the damage to the screens was considered functional. Motion, Ex. 19.

## II. THE MOTION

Great Lakes requests summary judgment and an order of declaratory judgment interpreting the Cosmetic Loss Exclusion that Great Lakes properly issued its February 4, 2019 partial denial of coverage; and, further, that there is no coverage under the Policy for the claims asserted in the August 28, 2018 Pinnacle letter, specifically, for the removal and replacement of the Highland West Tower's windows, metal panel siding, prefabricated window sills, T-mullions, and any damage to brake metal or other building envelope materials, and that that there is no coverage for damage to the building parapet caps. Great Lakes' argument is based on its assertion that because the damage was cosmetic and the affected building elements fall under the definition of "siding," the Cosmetic Loss Exclusion applies and there is no coverage.

Highland West counters that I should determine as a matter of law that the Cosmetic Loss Exclusion does not apply to windows because the plain language of the Cosmetic Loss Exclusion does not include windows in its definition of "siding." In its response, Highland West frequently refers to windows as "window components" or "window systems," by which it means more than just the pane of glass. According to Highland West, window components include window screens, windowsills, T-Mullions and brake metal. Highland West also argues that if the definition of "siding" is found to be ambiguous, I should determine as a matter of law that the definition does not include windows because a window is in place of a wall and logically does not fall within the definition of "materials exposed to the weather providing exterior protection to the walls of a building or structure." Response at 14.

## III. STANDARD OF REVIEW

The standard for granting summary judgment is applicable to actions for declaratory

judgment. *United States v. Gammache*, 713 F.2d 588, 594 (10th Cir. 1983). Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The interpretation of the contractual terms of an insurance policy is a matter of law on summary judgment when the facts, as here, are undisputed. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004); *see also Nat'l Union Fire Ins. Co. v. Fed. Ins. Co.*, 213 F. Supp. 3d 1333, 1340 (D. Colo. 2016), *aff'd*, 734 F. App'x 586 (10th Cir. 2018) (noting that under Colorado law "[t]he interpretation of an insurance policy, like any written contract, presents a question of law and, therefore, is appropriate for summary judgment") (citations omitted).

In diversity cases such as this, Colorado substantive law and federal procedural law applies. *Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). "An insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999) (citation omitted). Words in a policy of insurance "should be given their plain meaning according to common usage, and strained constructions should be avoided." *Farmers Alliance Mut. Ins. Co. v. Ho*, 68 P.3d 546, 548 (Colo. App. 2002) (citing *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002)); *Vill. Homes of Colo., Inc. v. Travelers Cas. & Sur. Co.*, 148 P.3d 293, 296 (Colo. App. 2006) (the court's construction of policy provisions must be "fair, natural and reasonable rather than strained or strictly technical"), *aff'd*, 155 P.3d 369 (Colo. 2007)). When interpreting an insurance contract, I try to carry out the parties' intent and reasonable expectations when they drafted the policies. *Thompson*, 84 P.3d at 501.

5

The Policy provision at issue here relates to an exclusion. "Exclusionary clauses exempting the insurer from providing coverage in certain circumstances must be written in clear and specific language and construed in favor of coverage." *McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 523 (Colo. App. 2004); *J & S Enters., Inc. v. Cont'l Cas. Co.*, 825 P.2d 1020, 1023 (Colo. App. 1991) (policy exclusions that limit coverage are to be strictly construed against the insurer). This general rule cannot, however, be utilized to rewrite or override the intent of the parties, expressed by clear and unambiguous language in the contract. *J & S Enters.*, 825 P.2d at 1023.

IV.     ANALYSIS

Highland West admits that it is seeking coverage based on cosmetic, and not functional, damage to certain building elements. The building elements for which it seeks coverage include the "west elevation screens, vertical T-Mullions, break [sic] metal, and sill flashings," as stated in the Pinnacle letter. Response at 7. I will refer to these four building elements as the "Disputed Elements."

Since it is admitted that the damage to the Disputed Elements was cosmetic, the only issue for me to decide is whether the Disputed Elements constitute "siding," as that term is defined in the Cosmetic Loss Exclusion. To review, the Cosmetic Loss Exclusion defines siding as follows: "'Siding' means the materials exposed to the weather providing exterior protection to the walls of a building or structure." There is no dispute that the Disputed Elements were exposed to the weather. However, Highland West argues that the Disputed Elements are all part of a "window system" and since the Cosmetic Loss Exclusion does not include windows in its definition of siding, I should not read into the definition that a window is included. Great Lakes concedes that windows themselves (the glass and frames, which were indisputably undamaged)

6

are essentially holes through the wall of a building, but argues that these holes must be sealed and that "any material that seals the window opening to provide exterior protection to the walls necessarily meets the policy definition of Siding." Motion at 17.

The affected building elements, discussed in detail below, include both the four Disputed Elements as well as other building elements that are referred to in the parties' briefs but do not appear to be at issue.

A. Affected Elements of the Building

Window Screens

It is unclear whether the damaged window screens are truly at issue. While window screens are included in the Pinnacle letter and are listed in Highland West's response among the building elements for which Highland West seeks coverage, Highland West makes no legal argument in its response regarding the claimed basis for coverage. In addition, CAG acknowledged in its February 4, 2019 letter, referenced above, that damage to the window screens was functional and that payment for their replacement coverage was being sent to Highland West. Motion, Ex. 19. Great Lakes also states in its reply that the window screen damage is not an issue in this case because all parties and experts agree that damage to the screens was functional. *See* Reply at 3, n. 1, citing Affidavit of Michael T. Kennick ¶¶ 21, 24 (stating that CAG, on behalf of Great Lakes, paid Highland West the replacement cost of the screens in January 2019).

T-Mullions

T-Mullions are pieces of aluminum formed around a foam core that are placed between individual window frames to fill the gap between the units. Motion ¶ 28. Highland West argues

that they are not subject to the exclusion because they are not considered "siding," but rather are a part of the window system. Great Lakes argues that because the purpose of T-Mullions is to prevent the entry of moisture or air into the building wall between the windows, they are "siding" and therefore subject to the exclusion.

    Brake Metal

Brake metal is flashing or trim around windows. Motion at 20; Response at 14. The Pinnacle letter noted damage to brake metal, but Great Lakes states that its inspectors observed no such damage. In any case, Great Lakes argues, brake metal, if damaged cosmetically, would fall under the exclusion as it meets the functional definition of "siding" because its purpose is "to help seal the gap around a window in order to create a weather barrier around the window frame." Highland West counters that brake metal is part of a window system and not siding and, therefore, it is not excluded from coverage by the Cosmetic Loss Exclusion.

    Sill flashings

Windowsill flashings are placed under the window frames and interlocked into the siding system. Motion ¶ 26. Highland West seeks coverage for windowsill flashings on the grounds that they are not considered "siding," pointing out that they are called *window* sills and "would be considered a window component under any commonly accepted definition." Response at 12. Therefore, Highland West argues, windowsills and their flashing are not subject to the exclusion. Great Lakes argues that the prefabricated sill flashings are an integral part of the siding system and that it is undisputed that that sill flashings are "interlocked into the siding system to provide a watertight construction." Motion ¶ 26; Motion at 16, 18. Therefore, according to Great Lakes, since the windowsills and sill flashings provide exterior weather protection of moisture entering

the building envelope, they are "siding" and subject to the exclusion.

### Parapet Caps

Highland West states in its response that parapet caps are not included in its claim and therefore it will not address whether they are excluded by the Cosmetic Loss Exclusion. It is also an undisputed fact that Highland West "has never made any claim for any hail damage to the parapet caps." Motion ¶ 31; Response ¶ 31. Parapet caps are not mentioned by Claim Solutions in its September 24, 2018 letter, or by Pinnacle in its August 28, 2018 letter, or by Great Lakes in the Amended Complaint. Yet Great Lakes, in connection with its motion, requests a ruling that there is no coverage for cosmetic damage to the parapet caps.

### Metal Panel Siding

Great Lakes notes that Pinnacle included the removal and replacement of metal panel siding in its proposal and letter. Great Lakes argues that since the metal panel siding was only cosmetically damaged and it clearly falls within the definition of "siding," it is excluded from coverage. In its response, Highland West admits that damage to the panel siding was only cosmetic and that it is not a window component. However, Highland West states that the panels "need to be replaced as they have obvious hail damage and are interlaced with the window systems such that they should be replaced at the same time as the windows are removed." Response at 12.

B. Determination on Coverage

I find that Great Lakes' interpretation of the definition of "siding," as including such dissimilar elements as windowsill flashings, T-Mullions, and brake metal, is a strained and hyper-technical construction of the Policy provision. A fair and natural construction of this

9

Policy provision, one that gives the words their plain meaning and applies common usage, does not go that far. There is nothing in the plain language of the Policy provision defining siding to indicate that dissimilar building elements such as windowsill flashings, T-Mullions, and brake metal are also excluded from coverage.

Great Lakes argues that the Policy definition of siding describes the function of the material rather than describing portions of building materials. That may be true; however, it does not allow Great Lakes to sidestep the requirement for clear and specific language in a policy exclusion such as this. *See McGowan*, 100 P.3d at 523. The exclusion at issue here is far from clear and specific (if not illogical) if it can be read, as Great Lakes argues, to include not only what is reasonably understood as siding, like the building's actual panel metal siding that was damaged, but also what is reasonably understood as the components of windows. And, while there is no dispute that windowsill flashings are interlocked into the siding system, that does not mean that windowsill flashings thereby become "siding" under the Policy's definition.

If Great Lakes had desired to broaden the meaning of "siding" to include such disparate elements as sill flashing and break metal, it could easily have done so by including them in its definition of siding, as it did in its definition of "roof covering." See Motion Ex. 4 ("'Roof Covering' means: a. the roof material exposed to the weather; b. The underlayments applied for moisture protection; c. All flashings required in the replacement of the roof covering.").

Heeding, as I must, the mandates that words in a policy of insurance be given their plain meaning according to common usage, that strained constructions be avoided and that exclusionary clauses be written in clear and specific language and construed in favor of coverage, I find that under a plain and unstrained reading of the Policy provision, T-Mullions,

10

brake metal (to the extent it was damaged) and sill flashings are not included in the Cosmetic Loss Exclusion's definition of siding and, therefore, Great Lakes was not justified in denying coverage for those elements.

Because there is no dispute that the window screens were functionally damaged (and the claim was paid), the issue is beyond the scope of the motion, Great Lakes' First Claim for Relief and this Order.

Considering the undeveloped state of the record regarding the parapet caps and since Highland West has confirmed that parapet caps are not included in its claim, there appears to be no controversy as to this issue. Therefore, I decline to rule on the question as to whether the parapet caps are excluded from coverage.

Finally, I find that the metal panel siding is excluded from coverage and grant the motion to that extent. However, I note that Highland West does not appear to disagree with Great Lakes that the siding is excluded from coverage, admitting that the siding suffered only cosmetic damage and is, obviously, siding as defined by the Policy. The issue regarding the panel siding, as raised in Highland West's response, is whether Great Lakes would be liable for its removal and replacement if the repair and replacement of covered losses, such as the windowsill flashings, requires, as Highland West asserts, the removal and replacement of the interlaced siding. I find that this issue, which was not briefed by the parties, is beyond the scope of the motion and this Order.

## V. CONCLUSION

For the reasons stated above, it is HEREBY ORDERED that Great Lakes' motion for partial summary judgment [Doc #69] is GRANTED IN PART AND DENIED IN PART AS

FOLLOWS:

1) Summary judgment is GRANTED as to the metal panel siding and, as a result, IT IS DECLARED that the Policy provides no coverage for damage to the metal panel siding pursuant to the Cosmetic Loss Exclusion;

2) Summary judgment is DENIED as to the sill flashings, T-Mullions and brake metal (to the extent it was damaged) and, as a result, IT IS DECLARED that the Policy provides coverage for these elements as the Cosmetic Loss Exclusion does not apply; and

3) As stated above, I make no ruling regarding the window screens or parapet caps, or whether Great Lakes would be liable for the metal panel siding if the repair and replacement of covered losses requires, as Highland West asserts, the removal and replacement of the interlaced siding.

DATED:    August 13, 2020 in Denver, Colorado.

                                                  BY THE COURT:

                                                     s/Lewis T. Babcock
                                                  LEWIS T. BABCOCK, JUDGE